In the Matter of Chandrakant Shridhar Pansé. October 6, 2015. *Attorney at Law*, Admission to practice. *Supreme Judicial Court*, Membership in the bar. *Practice, Civil*, Membership in the bar.

On May 13, 2008, Chandrakant Shridhar Pansé applied for admission to the Massachusetts bar. He took and passed the written bar examination in July, 2008. At first, the Board of Bar Examiners (board) received no objections to his admission and reported him qualified. Before he could take the oath of attorney, however, three attorneys in good standing contacted the board, raising significant concerns about whether Pansé "is of good moral character and sufficient acquirements and qualifications" to warrant admission to the bar. G. L. c. 221, § 37. See S.J.C. Rule 3:01, § 5.1, as appearing in 411 Mass. 1321 (1992). After two informal interviews with Pansé, an investigation by an attorney appointed as special counsel, and a formal hearing, the board determined that Pansé was not qualified for admission to the bar and recommended that his application be dismissed. S.J.C. Rule 3:01, § 5.3, as appearing in 411 Mass. 1321 (1992). Pansé filed a petition in the county court for a hearing on his application. A single justice of this court reserved and reported the matter to the full court. We agree with the board.

1. *Facts.* In its decision, the board made detailed findings of fact, which we summarize here.

a. *Divorce and related proceedings.* Pansé and his ex-wife had three children. When they divorced in 2008, Ms. Pansé was determined to be the primary residential parent for the two children who were minors, including their son, M., who is intellectually disabled due to Down syndrome. In the judgment of divorce nisi, a judge in the Probate and Family Court found Pansé "to be controlling, threatening and emotionally abusive to plaintiff/wife and two of their children . . . although he has no appreciation of such. He is, from his perspective, devoted to his children . . . but his narcissism and myopic view of all relationships have resulted in his inability to note or appreciate the harm which he causes." Pansé has filed numerous lawsuits against Ms. Pansé and others, and has filed professional complaints against numerous attorneys and judges involved in the divorce and related proceedings, each claimed by him to be founded in his concern over the care of M. He has repeatedly accused his ex-wife of abusing and neglecting M.; he also has accused his ex-wife, her counsel, and a guardian ad litem appointed for M. of perjury and of fraudulent actions. None of those accusations has ever been substantiated.

Pansé's conduct and demeanor during the divorce and related proceedings led the three attorneys, each of whom represented Ms. Pansé, to object to his

admission to the bar. We need not recite all of the details of their interactions with him here. According to the board, they described him as "a person of vengeance, control, and intimidation who misused the legal system at the expense of his family and others" and "not[ed] a belief that [he] would use his license to practice to harm others." Based on their testimony at the formal hearing, the board found that Pansé "consistently relied on personal attacks to justify his actions and to defend perceived criticisms against him, additionally filing complaints against members of the bar who challenge his positions." The record is replete with examples of his doing so. Indeed, it became necessary to reschedule the formal hearing when Pansé filed professional complaints against the objecting attorneys and others; the Board of Bar Overseers closed those complaints without further action.

Relatedly, Pansé's ex-wife obtained a temporary abuse prevention order against him pursuant to G. L. c. 209A. When the matter was heard in the District Court, Pansé claimed that the temporary order had been obtained fraudulently. Rather than substantiating that claim, however, Pansé pressed irrelevant arguments that his ex-wife was a poor mother to M., even after being admonished by the judge to focus on the issue at hand. One year later, at a hearing seeking an extension of the c. 209A order, Pansé again resorted to irrelevant personal attacks on her character and honesty.

In addition, after the c. 209A order was issued, Pansé commenced an action in the United States District Court for the District of Massachusetts, challenging the validity of the statute and claiming constitutional and civil rights violations. His complaint in the Federal court contained invective and personal attacks against his ex-wife, and the action failed on all counts, as did his appeal to the United States Court of Appeals for the First Circuit. The First Circuit found his appeal to be frivolous and ordered him to pay sanctions to his ex-wife and her counsel. Pansé unsuccessfully petitioned in the United States Supreme Court for a writ of certiorari. He did not comply with the First Circuit's order until after the initiation of the board's investigation in this case of his qualifications for admission to the bar.

b. *Other proceedings.* Apart from the divorce and other proceedings, Pansé has been involved in several other civil actions, some of which were not fully disclosed in his application for admission to the bar. As the board found, Pansé repeatedly engaged in ad hominem attacks in those cases. In a lawsuit he brought against his former employer, the Massachusetts Bay Community College, Pansé described the president of the college as a "reject from Montana." He also accused several defendants of lying and filing "malicious and fraudulent" reports, described some defendants as "morally challenged," and stated that the office of the Attorney General was "unethical" and had engaged in "repeated misconduct." He also accused the college's counsel of producing a witness "to lie wildly under oath." The board found that his actions "demonstrate a repetitive pattern of abusive and litigious behavior against litigants, counsel, judges and others who assume a contrary position" and that "Pansé does not appear to be remorseful, or, for that matter, capable of reflecting on the consequences of his behavior."

2. *Discussion.* "While deference is given to the decision of the board, this court retains ultimate authority to decide a person's fitness to practice law in the Commonwealth. G. L. c. 221, § 37." *Strigler* v. *Board of Bar Examiners*, 448 Mass. 1027, 1029 (2007), quoting *Matter of Prager*, 422 Mass. 86, 91 (1996).

"Any significant doubts about an applicant's character should be resolved in favor of protecting the public by denying admission to the applicant." *Strigler, supra,* quoting *Matter of an Application for Admission to the Bar,* 444 Mass. 393, 397 (2005). The board found on several grounds that Pansé lacked the honesty and good moral character necessary to practice law. It found that Pansé demonstrated a lack of candor by failing to disclose litigation to which he was a party or by failing to describe the circumstances fully; that he demonstrated a willingness to abuse the legal system for purposes of harassment and intimidation of individuals with whom he has a dispute; that his repeated reliance on personal attacks, as well as professional complaints against members of the bar who challenge his positions, further demonstrate a lack of civility and professionalism; and that despite his full awareness of the board's concerns about his fitness to practice law, he failed to express remorse or insight into his actions or to assure the board that he would have the ability to comport himself in a civil and professional manner. The record amply supports this assessment. Even in his brief to this court, Pansé continues to resort to personal attacks and invective, going so far as to accuse the board of aiding and abetting the alleged "felony endangerment and felony abuse" of M. This does nothing to assure us that Pansé possesses the good character necessary to practice law.

In addition, Pansé argues that the proceedings were unduly delayed. The board attributes any delay to the volume of records, the necessity of accommodating multiple attorneys' schedules, and Pansé's own actions. Regardless of the reasons for the delay, Pansé has not shown that the delay was prejudicial to him in any way. For example, he does not identify any evidence that was lost or any witnesses that have become unavailable. Moreover, "[e]ven if the board's proceedings were defective in some way, [Pansé] would still have to convince this court that he possesses the moral character necessary to practice law in this Commonwealth." *Strigler,* 448 Mass. at 1030. Despite having had ample opportunity, Pansé has not done so.

A judgment shall enter in the county court affirming the determination of the board and denying Pansé's application for admission to the bar.

*So ordered.*

*Chandrakant Shridhar Pansé,* pro se.
*Elizabeth H. Kelly* for Board of Bar Examiners.